Opinion of
the Court.
IN this case, the plaintiff in error filed his bill, stating that at sundry times and places, he was induced to play at cards with the defendant, Quarles, until the amount won by Quarles was six hundred dollars, for which sum, Quarles afterwards drew an order in favor of the other defendant, who knew the consideration was for gaming, and he accepted and paid the order. He prays a decree for the restoration of the money. The defendants demurred, and the court sustained the demurrer and dismissed the bill, to reverse which decision, this writ of error is brought.
The plaintiff states, that the gaming was known to the defendants only, and prays a discovery. One of the grounds relied on in the court below, was, that the bill ought to have been brought in the nature of a qui lam action. It must be at once conceded, that the com *490 plainant has not brought himself within the provisions of the act entitled “ an act to reduce into one the several acts to prevent unlawful gaming,” 2 Litt. 104,(1 Dig. 633); he has not brought his bill within three months from the time of gaming, or payment; nor does he pretend that the money was won within twenty-four hours. But, we conceive it is equally clear, that the case does not come within the provisions of the act entitled, “ an act more effectually to suppress the practice of gambling and duelling,” 2 Litt. 284, (1 Dig. 635); for that act, we conceive, only embraces in its provisions, money staked or betted, and actually exhibited or paid at the time and place of play, and not cases where persons have played upon credit, and made a gaming contract such as this, to be performed afterwards. Such cases are left to be governed by other principles; and this case resolves itself into the simple inquiry, whether equity will direct money to be restored which has been paid on a gaming contract, to recover which, the statutes afford no remedy. At common law, wagers were admitted into the class of valid contracts, for the enforcement of which, remedies were allowed. Anterior to any legislation on the subject, chancery watched such engagements with a jealous eye, and would frequently lay hold of slight circumstances to set them aside, such as the enormity of the demand, from which imposition would be presumed, or the fact that the sum won or lost, was beyond the estate and degree of the parties, would frequently induce the chancellor to interfere. All such decrees, however, treated these contracts as valid, and vacated them only when they were unfairly or oppressively made. Since the passage of the statutes of Virginia and this country, upon the subject, all such contracts are treated as they ought to be, and are placed upon the grade of base contracts, infected with a turpitude of consideration, and are declared void. Hence, equity has frequently set them aside when they were executory only, and has perpetually enjoined judgments founded upon securities given on such consideration, as in the cases of Buckner vs. Smith, 1 Wash. 299 and 389; 2 Hen. & Mun. 80; Davidson, &c. vs. Givens, 2 Bibb 200; Clay, &c. vs. Fry, 3 Bibb 248, and the cases there cited.
We have, however, in the researches which we have made on this subject, been unable to discover any case, *491 except that of Rawden vs. Shadwell, Ambler 269, where money, since the statutes of Great Britain declaring such contracts illegal, has been decreed by the chancellor to be refunded. In that case, there is a reliance placed upon the circumstances of the parties, the imprudence of the transaction and enormity of the demand. The chancellor there, appears to treat it as a contract which would not have been set aside, if fair, and to have resorted to the ancient reasons for interfering. Besides, there the contract was only partially fulfilled, and relief was required against the residue, not performed; and the chancellor, treating it as an entire thing, decreed that part which had been paid to be refunded.. In these features that case differed from the present, and it is hard to extract from it a principle which would authorize a refunding in all cases. We are unwilling from one precedent so ambiguous, to establish a rule that would permit the gamester, in the hour of repentance, to regain what he had improvidently and vitiously lost. It is a general principle, applicable both in chancery and at law, that when two unite in making an illegal and immoral contract, neither shall have remedy to enforce it, and if either fulfil, the other shall not recover back the money paid on such a base and illegal consideration, according to the maxim, in pari delicto potior est conditio defendens. It is indubitably politic and wise, to give the statutes against gaming that construction which would best suppress the mischief. But the distresses of a ruined gamester, standing as a monument of his folly, may do as much to restrain the practice, as the vexation of his co-partner in guilt could, arising from his being compelled to disgorge his ill-gotten wealth. The former, by his success, might be encouraged to renew his excesses, while the latter would not be certainly reformed, by being compelled to restore what he had gotten without consideration. Where two, therefore, in equal guilt, have agreed to game, as the plaintiff and defendant appear to have done, the chancellor or court of common law, ought not to interfere between them, further than to allow the possessor of the iniquitous gains, to retain what he holds, and to inflict the appropriate penalties for violating the laws of society, provided by the statutes themselves.
Decree affirmed.